IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

AUG 3 0 2012

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| ELIDIA PHARES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. B:11-63 |
| | § | |
| ACTAVIS-ELIZABETH LLC, | § | |
| ACTAVIS, INC., WYETH, INC., | § | |
| WATSON PHARMACEUTICALS, | § | |
| INC., and SCHWARZ PHARMA, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

BE IT REMEMBERED, that on August 30, 2012, the Court considered Defendants Actavis, Inc. and Actavis-Elizabeth, LLC's (collectively "Actavis") Motion to Dismiss, Dkt. No. 25, and Defendants Wyeth, Inc. and Schwarz Pharma, Inc.'s (collectively "Brand Defendants") Motion for Summary Judgment, Dkt. No. 56, and all responses and replies hereto. After reviewing the record, the applicable law, and the arguments of the parties, the Court **GRANTS** Actavis's Motion to Dismiss and **GRANTS** Brand Defendants' Motion for Summary Judgment.

### I.  Background

Sometime in 2002, Plaintiff Elidia Phares's ("Plaintiff") doctor prescribed to her the prescription drug Reglan, its generic equivalent ("metoclopramide"), or both, for the treatment of gastritis.[1] Following her physician's recommendation, Plaintiff regularly ingested a ten milligram dosage of the medication three to four times daily for eight years, up until the end of 2010. Although the precise date is not clear, Plaintiff states that after "ingesting Reglan/metoclopramide for several years, [she] began exhibiting abnormal movements, which have very recently been

---

[1] Except where otherwise stated, the Court relies on undisputed facts and allegations in the pleadings.

diagnosed as [t]ardive [d]yskinesia." Dkt. No. 20 at 12.  Plaintiff alleges that Reglan and metoclopramide are the cause of her tardive dyskinesia, a neurological movement disorder.

On April 1, 2011, Plaintiff initiated this products liability action arising under Texas law against Defendants Actavis, Inc. and Actavis-Elizabeth, LLC, Watson Pharmaceuticals, Inc., Wyeth, Inc., and Schwarz Pharma, Inc., all manufacturers of brand-name or generic Reglan.  The Court has jurisdiction over this case involving diverse parties pursuant to 28 U.S.C. § 1332.  Plaintiff filed an amended complaint on August 26, 2011.  *See* Dkt. No. 20.  Plaintiff's claims include negligence, negligent misrepresentation, fraud, suppression of evidence, strict liability, breach of the implied warranty of merchantability, breach of warranty for a particular purpose, and deceptive trade practices.  Plaintiff essentially argues that Defendants were aware of Reglan's adverse side effects and should have labeled their Reglan and metoclopramide products accordingly, thereby alerting consumers to those risks.  Actavis, as a manufacturer of generic Reglan, moves to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c).  Brand Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## II.   Applicable Law

### A. Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)); *see also In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  When performing a Rule 12(b)(6) analysis, all well-pleaded facts in the complaint must be accepted as true, and the complaint must be construed in a light most favorable to the plaintiff. *SEC v.*

*Cuban*, 620 F.3d 551, 553 (5th Cir. 2010); *In re Great Lakes*, 624 F.3d at 210 (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). However, "conclusory allegations, unwarranted factual inferences, [and] legal conclusions" need not be accepted as true. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *accord Iqbal*, 556 U.S. at 664; *In re Great Lakes*, 624 F.3d at 210. Additionally, "Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002).

Plaintiff's fraud claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff "state with particularity the circumstances constituting the fraud." "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).

## B. Motion for Summary Judgment Standard

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006); *Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World*, 448 F.3d at 752 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment for the moving party.'" *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World*, 448 F.3d at 752;

*Lockett*, 337 F. Supp. 2d at 891.  Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 36 F.3d 1069, 1075 (5th Cir. 1994).

"Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Celotex*, 477 U.S. at 325).  The non-movant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891.  Thus, the Court will not, "*in the absence of proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)); *see also TIG Ins. Co. v. Eagle, Inc.*, No. 05-CV-0179, 2007 WL 861153, at *2 (E.D. La. Mar. 19, 2007) (quoting *Little*, 36 F.3d at 1075).  Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. Fed. R. Civ. P. 56(e); *Piazza's Seafood World*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891.  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).  Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting *Celotex*, 477 U.S. at 322).

## III.   Plaintiff's Failure to Warn Claims Under Texas Law

The parties disagree on whether Plaintiff's claims should be characterized as failure to warn claims.  Plaintiff pleads eight causes of action: (1) negligence, (2) negligent misrepresentation, (3) strict liability, (4) breach of the implied warranty of merchantability, (5) breach of warranty for a particular purpose, (6) deceptive trade

practices, (7) fraud, and (8) suppression of evidence.   These claims arise from Plaintiff's injuries allegedly caused by her regular use of Reglan and its generic equivalent metoclopramide.    But despite Plaintiff's attempts to frame her arguments to the contrary, Texas law considers most of the foregoing claims as failure to warn claims.   *Cf. In re Norplant Contraceptive Products Liability Litigation*, 955 F. Supp. 700, 710 (E.D. Tex. 1997) (finding that similar claims against a drug manufacturer defendant were based on allegations of manufacturer's failure to warn), aff'd, 165 F.3d 374 (5th Cir. 1999); *see also Ebel v. Eli Lilly & Co.*, 536 F. Supp. 2d 767, 782 (S.D. Tex. 2008) (finding that strict liability, negligence, misrepresentation, and breach of warranty claims were essentially failure to warn claims), aff'd, 321 Fed. App'x 350 (5th Cir. 2009); *Dyer v. Danek Medical, Inc.*, 115 F. Supp. 2d 732, 740 (N.D. Tex. 2000) (dismissing Texas Deceptive Trade Practices Act claim because plaintiff's allegations were based on failure to warn).   Thus, after reviewing the substance of the complaint the Court considers Plaintiff's negligence, negligent misrepresentation, strict liability, breach of the implied warranty of merchantability, breach of warranty for a particular purpose, deceptive trade practices claims to be failure to warn claims.   *See Rozzell v. Security Services, Inc.*, 38 F.3d 819, 822 (5th Cir. 1994) (substance of allegation controls nature of claim).

Additionally, under Texas law "'Products liability action' means any action against a manufacturer or seller for recovery of damages arising out of personal injury . . . allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2) (Vernon Supp. 2011).   Applying this statutory definition to Plaintiff's Amended Complaint, the Court considers this case a products liability action, which, as discussed below, affects the viability of Plaintiff's claims.

## IV.   Actavis's Motion to Dismiss

Relying heavily on *Pliva, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), Actavis argues that FDA regulations preempt Plaintiff's state law failure to warn claims

against Actavis as a generic drug manufacturer. Plaintiff responds that *Mensing* applies only to cases involving labeling requirements, and that Plaintiff alleges several other causes of action untouched by *Mensing*.

### A. Plaintiff's Failure to Warn Claims Under *Pliva, Inc. v. Mensing*

#### i. Conflict Preemption

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Thus, when state and federal law directly conflict with each other, state law must yield to federal law. *See, e.g., Wyeth v. Levine*, 555 U.S. 555, 583, 129 S. Ct. 1187. Conflict preemption occurs where it is "impossible for a private party to comply with both state and federal requirements." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S. Ct. 1483 (1995) (internal quotation marks omitted). "The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." *Mensing*, 131 S. Ct. at 2579.

#### ii. FDA Drug Labeling Regulations

Federal law requires that a brand name drug manufacturer intending to introduce a new drug to the prescription drug market must first show that the drug is safe and effective and that the manufacturer's proposed label is accurate and adequate. *Mensing*, 131 S. Ct. at 2574. The FDA definition of label contains an extensive list of mediums by which to communicate a warning or information.

> Brochures, booklets, mailing pieces, detailing pieces, file cards, bulletins, calendars, price lists, catalogs, house organs, letters, motion picture films, film strips, lantern slides, sound recordings, exhibits, literature, and reprints and similar pieces of printed, audio, or visual matter descriptive of a drug and references published (for example, the "Physicians Desk Reference") for use by medical practitioners, pharmacists, or nurses, containing drug information supplied by the manufacturer, packer, or distributor of the drug and which are disseminated by or on behalf of its manufacturer, packer, or distributor are hereby determined to be labeling as defined in section 201(m) of the act.

21 C.F.R. § 202.1(l)(2).

In 1984, Congress passed the Drug Price Competition and Patent Term Restoration Act, 98 Stat. 1585, also known as the Hatch-Waxman Amendments ("Hatch-Waxman"). *Mensing*, 131 S. Ct. at 2574. Under Hatch-Waxman, generic drug manufacturers may "gain FDA approval simply by showing equivalence to a reference listed drug that has already been approved by the FDA." *Id.* Thus, while brand name and generic manufacturers are both subject to FDA regulation, a generic drug manufacturer using the same active ingredients as a brand name can avoid the time and cost associated with showing safety and efficacy through clinical trials. *Id.*

A brand name manufacturer may unilaterally "add or strengthen a contraindication, warning, [or] precaution," or "add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product." 21 C.F.R. §§ 314.70(c)(6)(iii)(A), (C). Known as the "changes-being-effected" process ("CBE"), a brand name manufacturer need not seek prior approval from the FDA when initiating a CBE label change. *See Wyeth*, 555 U.S. at 568. The issue decided in *Mensing* was whether generic manufacturers could be required by state law to unilaterally change generic labels after initial FDA approval.

### iii. *Pliva, Inc. v. Mensing*

The facts in *Mensing* were exceedingly similar to the facts presented here. *Mensing* was a consolidation of two lawsuits where each plaintiff sued generic manufacturers of metoclopramide. *Mensing*, 131 S. Ct. at 2572-73. Specifically,

> [e]ach alleged . . . that long-term metoclopramide use caused her tardive dyskinesia and that the Manufacturers were liable under state tort law (specifically, that of Minnesota and Louisiana) for failing to provide adequate warning labels. They claimed that "despite mounting evidence that long term metoclopramide use carries a risk of tardive dyskinesia far greater than that indicated on the label," none of the Manufacturers had changed their labels to adequately warn of that danger.

*Id.* As here, the generic manufacturer defendants in both cases argued that federal law preempted the plaintiffs' failure to warn claims. *Id.* After summarizing generic manufacturer duties under state and federal law, the Supreme Court examined

whether conflict preemption precluded generic manufacturers from strengthening the warnings on their labels—pursuant to a duty under state law—independent of the FDA and after initial FDA approval. *Id.* at 2574. After conducting its analysis, the Supreme Court decided the applicable federal law preempted state tort law.

> We find impossibility here. It was not lawful under federal law for the Manufacturers to do what state law required of them. And even if they had fulfilled their federal duty to ask for FDA assistance, they would not have satisfied the requirements of state law.

> If the Manufacturers had independently changed their labels to satisfy their state-law duty, they would have violated federal law. Taking Mensing and Demahy's allegations as true, state law imposed on the Manufacturers a duty to attach a safer label to their generic metoclopramide. Federal law, however, demanded that generic drug labels be the same at all times as the corresponding brand-name drug labels. *See, e.g.,* 21 C.F.R. § 314.150(b)(10). Thus, it was impossible for the Manufacturers to comply with both their state-law duty to change the label and their federal law duty to keep the label the same.

*Id.* at 2577-78.

### iv.  Plaintiff's Failure to Warn Claims are Preempted

Actavis argues that *Mensing* mandates dismissal of all claims in this case, while Plaintiff contends that *Mensing* applies to "only one theory of liability, and that the numerous other theories advanced by Plaintiff remain viable causes of action." Dkt. No. 39 at 7.

As discussed above, under Texas law Plaintiff's negligence, negligent misrepresentation, strict liability, breach of the implied warranty of merchantability, breach of warranty for a particular purpose, and deceptive trade practices claims are all considered failure to warn claims in this case. *See Rozzell*, 38 F.3d at 822 (substance of allegation controls nature of claim). No matter how she casts her claims, Plaintiff essentially alleges that Actavis failed to warn her that metoclopramide causes tardive dyskinesia. In *Mensing*, the Supreme Court clearly held that federal labeling requirements for generic drug manufacturers preempt state duty to warn claims. To the extent Plaintiff attempts to allege a separate failure to monitor or report claim, *Mensing* also discussed that federal law

bars state law from imposing on generic manufacturers a duty to independently monitor. *Mensing*, 131 S. Ct. at 2581; *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) (noting "it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance" with law administered by FDA); *Saporito v. Cincinnati Inc.*, 2004 WL 234378, at *4-5 (Tex. App.—Houston [14th Dist.] 2004) (unpublished) (claims for "negligent failure to warn and to inspect" were products liability failure to warn claims). Moreover, Plaintiff's attempt to limit *Mensing* by citing a variety of cases discussing express preemption is misplaced as those cases are inapplicable to the Supreme Court's conflict, or impossibility, preemption analysis in *Mensing*.

Here, as in *Mensing*, federal law preempts all of Plaintiff's failure to warn claims because it is impossible for a generic manufacturer to unilaterally strengthen its warning label pursuant to state law while simultaneously maintaining a label identical to the corresponding name brand label in compliance with federal law. *See Mensing*, 131 S. Ct. at 2580-81. Indeed, a review of pharmaceutical products liability cases in federal district courts decided post-*Mensing* reveals nearly every other district court addressing this issue has held similarly. *See, e.g., In re Accutane Products Liability*, Nos. 8:04-MD-2523-T-30TBM, 8:12-CV-845-T-30TBM, 2012 WL 3194952, at *2 (M.D. Fla. Aug. 7, 2012) (listing district court decisions dismissing claims pursuant to *Mensing*); *Fullington v. Pliva, Inc.*, No. 4:10-CV-236-JLH, 2011 WL 6153608, at *4 (E.D. Ark. Dec. 12, 2011) (same). To the extent Plaintiff has pleaded claims that potentially could be considered sounding under a theory other than failure to warn, those claims are discussed below. *See* discussion *infra* Part IV.C.

### B. Presumption of Non-liability under Texas Law

Additionally, where prescription drug manufacturers comply with Food and Drug Administration ("FDA") regulations, Texas law creates a rebuttable presumption of non-liability in prescription drug suits. *See* Tex. Civ. Prac. & Rem. Code. Ann. § 82.007. Section 82.007 of the Texas Civil Practice and Remedies Code provides, in relevant part:

(a) In a products liability action alleging that an injury was caused by a failure to provide adequate warnings or information with regard to a pharmaceutical product, there is a rebuttable presumption that the defendant or defendants, including a health care provider, manufacturer, distributor, and prescriber, are not liable with respect to the allegations involving failure to provide adequate warnings or information if:

> (1) the warnings or information that accompanied the product in its distribution were those approved by the United States Food and Drug Administration for a product approved under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Section 301 et seq.), as amended, or Section 351, Public Health Service Act (42 U.S.C. Section 262), as amended; or

> (2) the warnings provided were those stated in monographs developed by the United States Food and Drug Administration for pharmaceutical products that may be distributed without an approved new drug application.

(b) The claimant may rebut the presumption in Subsection (a) as to each defendant by establishing that:

> (1) the defendant, before or after pre-market approval or licensing of the product, withheld from or misrepresented to the United States Food and Drug Administration required information that was material and relevant to the performance of the product and was causally related to the claimant's injury . . . ;

Plaintiff's complaint assumes Defendants' warnings complied with FDA standards, yet Plaintiff attempts to rebut the § 82.007 statutory presumption by claiming that Defendants "withheld from and misrepresented to the United States FDA required information that was material and relevant to the performance of Reglan/metoclopramide and . . . they are ineligible to take advantage of the presumption afforded by § 82.007." Dkt. No. 20 at 33, ¶ 9.01.

The Fifth Circuit, however, recently determined that a fraud-on-the-FDA claim under § 82.007(b)(1), as invoked by Plaintiff here, will be preempted "unless

the FDA itself has found fraud." *Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 380 (5th Cir. 2012). Plaintiff's Amended Complaint fails to allege that the FDA has found fraud on the part of Actavis, therefore Plaintiff's claim of misrepresentation is insufficient to rebut the § 82.007 presumption because it is preempted by federal law. *See id.* Consequently, the statutory presumption of non-liability applies in this case. *See id.* Since the Texas non-liability presumption applies and Plaintiff has not pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Plaintiff's failure to warn claims must be dismissed. *Iqbal*, 556 U.S. at 678.

### C.  Plaintiff's Remaining Claims

The Court now considers the two remaining claims potentially not covered by the analysis above: fraud and suppression of evidence. Plaintiff alleges, in a conclusory fashion by reciting the general elements of fraud, that Defendants made fraudulent misrepresentations to Plaintiff. To the extent this claim is not covered by the discussion above, it must be dismissed because it fails to fulfill the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Plaintiff's generic allegations do not include the "the who, what, when, where, and how" of the alleged fraud. *Benchmark Electronics*, 343 F.3d at 724.

Plaintiff also alleges that Defendants "suppressed evidence." To the extent this claim is not covered by the discussion above, the Court notes that Plaintiff provides no authority for her suppression of evidence claim, and the Court is unaware of any authority recognizing suppression of evidence as a cause of action under Texas law. Thus, the suppression of evidence claim does not appear to be cognizable as a separate cause of action and it must be dismissed.

### IV.  **Brand Defendants' Motion for Summary Judgment**

Brand Defendants are moving for summary judgment on all of Plaintiff's claims. Brand Defendants argue they cannot be found liable here because (1) under Texas law a products liability action can only be brought against the manufacturer or distributor of the tortious product; (2) this is a products liability action; and (3) Brand Defendants did not manufacture or distribute the products consumed by

Plaintiff, thus they have no duty to Plaintiff. Plaintiff argues that (1) this is not a products liability action as Plaintiff is pursuing only claims for negligence, fraud, and misrepresentation; (2) Brand Defendants misstate binding and persuasive authority and Plaintiff's theory of recovery is consistent with Texas law; and (3) *Mensing* implicitly overturned a seminal case relied on by Brand Defendants. Plaintiff and Brand Defendants do not dispute the underlying facts and Plaintiff concedes she did not ingest Brand Defendants' Reglan; rather, they simply disagree over both the nature of the claims and the applicable controlling law.

### A. This is a Products Liability Case

First, the Court will address the dispute between Plaintiff and Brand Defendants over what Plaintiff is actually claiming and whether this is a products liability case. A "'Products liability action' means *any action* against a manufacturer or seller for recovery of damages arising out of personal injury . . . allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, *or any other theory or combination of theories*." Tex. Civ. Prac. & Rem. Code. Ann. § 82.001(2) (emphasis added). Federal and state courts read § 82.001(2) broadly. *See Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999) (emphasizing plain language of the statute and finding plaintiff's fraud, conspiracy, and DTPA claims covered by § 82.001(2)); *Burke v. Wyeth, Inc.*, No. G-09-CV-82, 2009 WL 3698480, at *2 (S.D. Tex. Oct. 29, 2009) ("under Texas law all claims for personal injury allegedly caused by a defective product are, regardless of the theory alleged, products liability actions.") (internal quotation marks omitted); *Saporito v. Cincinnati Inc.*, 2004 WL 234378, at *4-5 (Tex. App.—Houston [14th Dist.] 2004) (unpublished) (claims for "negligent failure to warn and to inspect" were § 82.001(2) products liability claims). The Court has already analyzed Plaintiff's claims in her Amended Complaint and decided that no matter how she attempts to characterize her claims, when applying Texas law in this diversity case the result is clear: this is a products liability action. *See* discussion *supra* Part III. The Court stands by this assessment.

But Plaintiff is now abandoning most of the claims in her Amended Complaint in an attempt to distinguish her case from a products liability action. She asserts that her causes of action against Brand Defendants "do not rely on any claims that the metoclopramide ingested was defective or otherwise manufactured improperly" and instead only "alleges harm caused by Brand Defendants' negligence and fraud." Dkt. No. 62 at 10. However, a claim that the Brand Defendants negligently failed to warn about the dangers of Reglan or generic Reglan is not distinct from a failure to warn products liability claim. *See Saporito*, 2004 WL 234378, at *4-5. Under the plain language of § 82.001(2), this remains a products liability action predicated upon defective marketing or warnings. Other federal courts in Texas addressing similar claims by generic metoclopramide users against brand name manufacturers have concluded that such claims are products liability actions under § 82.001(2). *Finnicum v. Wyeth, Inc.*, 708 F. Supp. 2d 616, 619 (E.D. Tex 2010); *Burke*, 2009 WL 3698480, at *3; *Pustejovsky v. Wyeth, Inc.*, No. 4:07-CV-103-Y, 2008 WL 1314902, at *2 (N.D. Tex. Apr. 30, 2008).

Plaintiff argues that a state appellate decision in California, *Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89, 101 (Cal. App. 2008), supports her argument that her negligent warning claims should be considered distinct from products liability claims. *Conte*, however, is not binding authority. Moreover, this Court is not persuaded by *Conte* and its holding is inapplicable to this case. *See Burke*, 2009 WL 3698480, at *3 (declining to apply *Conte* to similar Texas products liability case). Given the plain language of § 82.001(2), this is still a products liability action.

**B. Discussion**

Plaintiff's medical and pharmacy records show that Plaintiff ingested only generic metoclopramide manufactured by generic manufacturers. *See* Dkt. No. 56, Exhs. 5-7 (Plaintiff's pharmacy records and National Drug Code Directory Excerpts for Defendants). It is undisputed that Plaintiff never ingested Reglan manufactured or distributed by Brand Defendants. But Plaintiff argues this undisputed fact makes no difference since she intends to pursue only negligence, fraud and misrepresentation causes of action against Brand Defendants.

Because Brand Defendants are moving for summary judgment on all claims, the Court will address first the claims as pleaded in Plaintiff's Amended Complaint—including Plaintiff's claims of negligence, fraud, and misrepresentation that she now asserts are her only causes of action against Brand Defendants—and then remaining claims, if any, that may exist outside a products liability action.

### i. Plaintiff's Claims Under Texas Products Liability Law

Even though it is undisputed that Plaintiff never ingested Reglan manufactured or distributed by Brand Defendants, Plaintiff insists Brand Defendants violated a duty owed to her. Because there is no Texas Supreme Court opinion addressing the exact issue presented in this case, "the court must make an 'Erie guess' as to how the Texas Supreme Court would apply state law." *Finnicum*, 708 F. Supp. 2d at 619 (citing *Beavers v. Metropolitan Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009)).

Plaintiff argues that *Alm v. Aluminum Co. of America*, 717 S.W.2d 588 (Tex. 1986), supports her theory that Brand Defendants owed Plaintiff a duty to warn. The plaintiff in *Alm* was injured by an aluminum bottle cap that exploded off of a soft drink bottle. *See Alm*, 717 S.W.2d at 590. The defendant there argued it owed no duty to warn the plaintiff because the defendant did not manufacture or sell the final product—the soft drink bottle, although it admitted it was the designer and marketer of the product, plus the seller of the machine that capped the bottles. *See id.* Based on the defendant's extensive and direct connection to the final product, the Texas Supreme Court held that the defendant in Alm owed a duty to the plaintiff. *See id.* at 595.

Brand Defendants primarily rely on a more recent case, *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608 (Tex. 1996). In *Barajas*, the plaintiff's survivors sued the defendant after plaintiff was killed in an accident caused by a tire manufactured by a third-party which had incorporated defendant's design into the third-party's design. *Id.* at 611-12. In that case, the Texas Supreme Court stated that "[a] manufacturer generally *does not have a duty to warn or instruct about another manufacturer's products*, even though a third party might use those

14

products in connection with the manufacturer's own product." *Id.* at 614 (emphasis added). The Texas Supreme Court went on to state that "[u]nder traditional products liability law, the plaintiff must prove the defendant supplied the product that caused the injury. It is not enough that the seller merely introduced products of similar design and manufacture into the stream of commerce." *Id.* The Texas Supreme Court concluded that the defendant in *Barajas* was not liable. *Id.* at 617.

The facts of *Barajas* are more analogous to this case—where it is not contested that Plaintiff did not ingest products manufactured or distributed by Brand Defendants—than *Alm*. In Texas, the "imposition of products liability is precluded when the defendant did not supply the product that caused the plaintiff's injuries." *Finnicum*, 708 F. Supp. 2d at 619; *see New Texas Auto Auction Services, L.P. v. Gomez De Hernandez*, 249 S.W.3d 400, 403 n.18 (Tex. 2008); *Barajas*, 927 S.W.2d at 616; *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989).

Based on *Barajas* and a review of the relevant authorities, the Court holds that Brand Defendants are not liable under Texas law in a products liability action where Plaintiff ingested only generic metoclopramide because there simply is no legally cognizable duty. *See Barajas*, 927 S.W.2d at 613. The majority of federal district courts in Texas addressing this issue have held similarly. *See Finnicum*, 708 F. Supp. 2d at 621-22; *Hardy v. Wyeth, Inc.*, No. 9:09-CV-152, 2010 WL 1049588, at *4-5 (E.D. Tex. Mar. 8, 2010) adopted by, 2010 WL 1222183, at *1 (E.D. Tex. Mar. 29, 2010); *Burke*, 2009 WL 3698480, at *3; *Cousins v. Wyeth Pharm., Inc.*, No. 3:08-CV-310-N, 2009 WL 648703, at *2 (N.D. Tex. Mar. 10, 2009); *Pustejovsky*, 2008 WL 1314902, at *2; *Block v. Wyeth, Inc.*, No. 3:02-CV-1077, 2003 WL 203067, at *3 (N.D. Tex. Jan. 28, 2003); *but see Easter v. Aventis Pasteur, Inc.*, No. 5:03-CV-141, 2004 WL 3104610, at *10 (E.D. Tex. Feb. 11, 2004). Brand Defendants owe Plaintiff no duty as a matter of law.

Moreover, although Plaintiff asserts that *Mensing* "largely overturned" the reasoning underlying a seminal Fourth Circuit opinion, *Foster v. American Home Products Corp.*, 29 F.3d 165 (4th Cir. 1994) (rejecting claims against name brand pharmaceutical manufacturer)—and thus by extension, several federal and state

court decisions relied upon by Brand Defendants—she does not provide support for her argument. Dkt. No. 62 at 22. The two cases Plaintiff cites—*Kellogg*, from the District of Vermont and *Conte*, a California state appellate case—were both decided before *Mensing*. *Kellogg v. Wyeth*, 762 F. Supp. 2d 694 (D. Vt. 2010); *Conte*, 168 Cal. App. 4th at 101. Plaintiff ignores the federal decisions issued post-*Mensing* that decided *Mensing* does not affect state law products liability principles. *See, e.g.*, *Smith v. Wyeth, Inc.*, 657 F.3d 420, 423-24 (6th Cir. 2011) (affirming district court's order granting motion for summary judgment after considering supplemental briefing regarding *Mensing* decision); *Guarino v. Wyeth LLC*, No. 8:10-CV-2885-T-30TGW, 2012 WL 1138631, at *2 (M.D. Fla. Apr. 3, 2012); *Metz v. Wyeth LLC*, 830 F. Supp. 2d 1291, 1293-94 (M.D. Fla. 2011); *Gross v. Pfizer, Inc.*, No. 8:10-CV-00110-AW, 2011 WL 4005266, at *2 (D. Md. Sept. 7, 2011) (the "holding in *Mensing* neither created nor abrogated any duty under Maryland law with regard to brand-name manufacturers"). *Mensing* does not affect the principles underlying Texas products liability law and the Court is not persuaded by Plaintiff's attempts to convince the Court otherwise.

Based on the applicable products liability statute and relevant case law, Plaintiff cannot prevail on any of her claims against Brand Defendants and Brand Defendants' motion for summary judgment must be granted.[2]

### ii. Suppression of Evidence

While she supposedly no longer is pursuing this claim, Plaintiff's Amended Complaint alleges that Brand Defendants "suppressed evidence." To the extent this claim is not covered by the discussion above, the Court notes that Plaintiff provides no authority for her suppression of evidence claim, and the Court is unaware of any authority recognizing suppression of evidence as a cause of action under Texas law. Thus, the suppression of evidence claim does not appear to be cognizable as a separate cause of action and summary judgment on this claim is proper. *See*

---

[2] Although not raised by either Plaintiff or Brand Defendants, the Court notes that because the claims against Brand Defendants are covered by § 82.001(2), the rebuttable presumption of non-liability in prescription drug suits likely applies here as well. *See* discussion *supra* Part IV.B; Tex. Civ. Prac. & Rem. Code. Ann. § 82.007.

*Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992) (while failing "to state a claim usually warrants dismissal under Rule 12(b)(6) . . . in many cases, the failure to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact.").

## V.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants Actavis, Inc. and Actavis-Elizabeth, LLC's Motion to Dismiss, Dkt. No. 25, and dismisses those claims with prejudice, and **GRANTS** Defendants Wyeth, Inc. and Schwarz Pharma, Inc.'s Motion for Summary Judgment, Dkt. No. 56.

DONE at Brownsville, Texas, on August 30, 2012.

Hilda G. Tagle
United States District Judge